UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL VASQUEZ,

                         PLAINTIFF,             2014 CV 491
                                                AMENDED
                                                VERIFIED
             -against-                     COMPLAINT AND
                                                DEMAND FOR
                                                  JURY TRIAL

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DETECTIVE JOSEPH LITRENTA, Shield Number 1828,
POLICE OFFICERS "JOHN DOE" #1-5 (said names being
fictitious, as the true names are presently unknown), Individually
and in their Official Capacities, and Assistant District Attorney
Ryan W. Brackley, Esq.
                                   DEFENDANTS.

         The Plaintiff, Michael Vasquez, by his attorney, Herbert Moreira-Brown, Esq., complaining of the defendants, respectfully alleges:

## PRELIMINARY STATEMENT

         1. Plaintiff, Michael Vasquez, brings this action for compensatory damages, punitive damages and attorney's fees pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution of the United States of America and 42 U.S.C. Sections 1983, 1985, 1986 and 1988, for the wrongful acts of Defendants The City of New York, New York Police Department Detective Litrenta, A.D.A Ryan W. Brackley, Police Officer's "John Doe" #1-5 (said names being fictitious, as the true names are presently unknown), as Officers of the New York City Police Department, all acting under color of law and pursuant to their

official authority, in violation of Plaintiff's rights, as said rights are secured by said statutes and the Constitution of the United States of America.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. sections 1983, 1985, 1986, 1988, and the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and under the Constitution of the State of New York.

3.   Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional provision, and pursuant to 28 U.S.C. sections 1331,1343 and by the principles of supplemental jurisdiction pursuant to 28 U.S.C. SECTION 1367, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

4.   Plaintiff further invokes this Court's pendent jurisdiction over any and all state law claims and causes of action which derive from the same nucleus of the operative facts that give rise to the federally based claims and causes of action pursuant to 28 U.S.C. Section 1367.

## VENUE

5.   Venue is properly laid in this District under 28 U.S.C. section 1391(b) this being the District in which the claim arose.

## TRIAL BY JURY DEMAND

6.   Plaintiff demands a trial by jury on each and every one of his claims as pled herein pursuant to Federal Rules of Civil Procedure 38(b).

## PARTIES

7.   At all times relevant hereto, Plaintiff, Michael Vasquez, was a resident of

the State of Florida. Plaintiff Michael Vasquez presently lives in New York State.

 8.  At all times relevant hereto, defendant The City of New York (hereinafter, New York City) is a municipality of the State of New York and owns, operates, manages, directs and controls the New York City Police Department (NYPD), which employs all of the other named defendants of the New York City Police Department except for Defendant A.D.A. Ryan W. Brackley.

 9.  At all times relevant to this action, New York Police Department Detective Joseph Litrenta and P.O. "John Doe" #1-5 (said names being fictitious, as the true names are presently unknown), are and/or were police officers employed by the New York City Police Department (hereinafter, "NYPD"), and acting under color of law.

 10. At all times relevant hereto and in all their actions described herein, said Defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the NYPD and New York City, pursuant to their authority as employees, servants and agents of the NYPD and City of New York, within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and police officers of the City of New York and NYPD.

 11. The City of New York was responsible for the hiring, training, supervision, discipline, retention and promotion of the police officers, sergeants, and/or employees of the NYPD. This failure to train and/or supervise the city employees constituted an official policy or custom which amounted to deliberate indifference, by the City of New York, to the rights of those with whom the city employees interact with.

12. At all times relevant to this action, defendant Assistant District Attorney Ryan W. Brackley, Esq., was the prosecuting attorney, who prosecuted this action against the Plaintiff and was hired, trained, supervised, disciplined, if necessary, and handled criminal actions against defendants who were arrested by the employees of the NYPD.

<u>FACTS</u>

13. On January 11, 1997, an individual approached a parked car on 192nd Street and St. Nicholas Avenue in Manhattan, New York, allegedly pointed a simulated gun at Janette Andriuolo and Rigo Gonzalez, Jr. and allegedly ordered them out of the car. Rigo Gonzalez, Jr. and Ms. Andriuolo got out of the car and the perpetrator drove away with that car and with the purse of Ms. Andriuolo still in the car. At the scene of the crime Ms. Andriuolo described the perpetrator as 5'3" tall 145 pounds and his hair length was very long. On the date and time of the robbery Ms. Andriuolo told Det. Litrenta that she did not know the name of the robber nor had she ever seen that person before. She was taken to the 34th Precinct by the police officers of the New York City Police Department.

14. Detective Joseph Litrenta was assigned to investigate the robbery and the theft of the automobile. Det. Litrenta first met Ms. Andriuolo at the 34th Precinct on January 11, 1997. On January 11, 1997, Ms. Andriuolo did not state the name of the person who committed the crime nor did she tell Det. Litrenta that she knew the name of the person who had pointed a gun at her and had stolen the car she was a passenger in. In fact she did not know the name nor the identify of the person who had committed the crime of robbery on January 11, 1997.

4.

15. At the trial of Mr. Michael Vasquez, in September of 1997, Det. Litrenta testified that a day after the January 11, 1997 robbery, on January 12, 1997,  he received a tip, from an informant, giving the "name" of Michael Vasquez as the person who had stolen the car and the purse of Janette Andriuolo at gunpoint. He further stated that he focused the police investigation on Michael Vasquez because of this "tip". A.D.A. Ryan W. Brackley never established the identity of the informant nor was any sworn testimony given attesting to the reliability of the "alleged" informant. Det. Litrenta intentionally gave misleading testimony that day.

16. On January 3, 2012, at a New York State Criminal Procedure Law Section 440.10(1)(g) hearing Detective Joseph Litrenta testified under oath and stated "Someone had phone called and left information that the person that perpetrated the crime was named Mikey Vasquez."

17. Det. Joseph Litrenta further testified, in response to "Did you ever inquire as to who gave that information" (regarding who left the tip) he stated "Yes. Jeanette Andriuolo", and he stated in response to the question "She called and said it was Michael Vasquez?" Det. Joseph Litrenta testified "She was the caller, yes."

18. Det. Joseph Litrenta was asked " Now you spoke to Ms. Andriuolo on January 11[th](1997); is that correct?" and Det. Joseph Litrenta responded "Yes, that's correct." Det. Joseph Litrenta was then asked "Did she tell you that Michael Vasquez had robbed her on January 11[th], 1997? Det. Joseph Litrenta responded "No, she did not." He was then asked "Okay, and then the next day, she called you back and said that Michael Vasquez robbed her?  Then New York State Supreme Court Justice Lewis Bart Stone asked Det. Joseph Litrenta "Was it closer to – was it

close to the time of the crime or was it significantly –was there a significant delay?" Det. Joseph Litrenta responded "…it was close. It was shortly after the crime.  To which Justice Lewis Bart Stone replied "Uh-huh."

19. Det. Joseph Litrenta was then asked by Justice Lewis Bart Stone "Did you ever ask Ms. Janet Andriuolo as to how it came to her attention that Michael Vasquez was the perpetrator of the crime?" Det. Joseph Litrenta responded "Yes." Justice Lewis Bart Stone then asked "And what was her response?" Det. Joseph Litrenta responded "She said that Raul (Gonzalez) told her Mikey was the one that robbed her."

20. Counsel Herbert Moreira-Brown then asked "So Raul told her that Michael Vasquez did the crime?" Det. Joseph Litrenta responded " Raul, Janette told me Raul's the one that told her Mikey Vasquez, Michael, Mikey, however he referred to him to her, was the one that robbed her."

21. Det. Joseph Litrenta was then asked "Okay. But she didn't tell you that on January11th, 1997; is that correct?" To which Det. Joseph Litrenta responded "She did not know who robbed her on January 11th, 1997."

22. Det. Joseph Litrenta was asked "So the person that called you to tell you that the robber was Michael Vasquez was Janette Andriuolo?" Det. Joseph Litrenta responded "I later found out it was her that made the phone call, yes." Det. Joseph Litrenta was then asked "And that was the next day; is that correct?" Det. Joseph Litrenta responded "Yes." Det. Joseph Litrenta was then asked "Now, so the next day would be January 12th; is that correct?" Det. Joseph Litrenta responded "Yes." Det. Joseph Litrenta was then asked "But on January 11th she didn't know who the

robber was?" Det. Joseph Litrenta responded "That's correct." Det. Joseph
Litrenta was then asked "But January 12th she knew who the robber was and what
his name was?" Det. Joseph Litrenta responded "Well, I'm not saying that she knew
him. She just called. She was the one who called and left a message that the person
that did the robbery was named Mikey Vasquez." Det. Joseph Litrenta was then
asked "And she told you that Raul Gonzalez told her that that was the robber?"
Det. Joseph Litrenta responded "Later on when I spoke to her, yes." Det. Joseph
Litrenta was then asked "Did Raul Gonzalez ever tell you he witnessed the
robbery?" Det. Joseph Litrenta responded "No, he did not." Det. Joseph Litrenta
was then asked "From your knowledge of this case as a detective in this case, did
you ever come upon any information that Raul Gonzalez witnessed the robbery?
Det. Joseph Litrenta responded "Raul Gonzalez as far as I know never witnessed
`the robbery?"

  23. Detective Joseph Litrenta was told by defense counsel Herbert Moreira-
Brown "I want to show you, detective, People's 12 in evidence. He was then asked
"And that's the photo array, is that correct? Detective Litrenta replied "Yes".
Detective Litrenta was then asked "And on the back cover, there is some writing
back there. I want to refer you to the back cover of that photo array." Detective
Litrent said "Yes". He was asked "What does that say?" Detective Litrenta
Inquired "From top to bottom". Defense counsel answered "Yes". Detective
Litrenta testified "It has the date 2/1/97. The time 1620 hours, which is 4:20p.m.
'Number 5, looks like the guy who robbed me.' Janette Andriuolo signed it. Number
5 is the one I know as Mike Vasquez.' Raoul Gonzalez signed it."

24. Detective Litrenta was asked by defense counsel Herbert Moreira-Brown "Now, and what was the reason why you said that you allowed someone who had not witnessed the crime see the photo array like Mr. Raul Gonzalez? Detective Litrenta responded "Again after conducting an investigation, I knew Raul Gonzalez had supplied the name Michael Vasquez as the one who did the robbery. I later on found out Janette (Andriuolo) was the one who called that name in. After the –after further investigation, there came a day where I prepared a photo array. After Janette identified Michael Vasquez in that photo array, after that I went and met with Raul Gonzalez who I knew personally knew Michael Vasquez to reassure myself that the victim in the crime did not pick out the wrong person. I showed him that photo array and he confirmed when he identified the photo of Michael Vasquez, that is the person who he knows as Michael." Detective Litrenta was then asked "Okay. How did you know that Raul Gonzalez knew Michael Vasquez? Detective Litrenta responded "Because he said he did." Defense counsel then asked "And when did he tell you this?" Detective Litrenta answered "When he told Janette that." Defense counsel then asked "And when did he tell Janette that?" Detective Litrenta answered "When she called in the message." Justice Lewis Bart Stone said "Let me ask a few questions. You know that Michael, that Raul – you knew that Raul knew Michael?" Detective Litrenta answered "I later found that out." Justice asked "From the past? Detective Litrenta answered "I later found that out." Justice Stone then asked "You found that out?" Detective Litrenta stated "Yes." Justice Stone asked "Did you ever inquire from Raul how he knew that Michael was involved in the robbery?" Detective Litrenta replied "Yes." Justice

Stone asked "And what did he say? What did Raul say?" Detective Litrenta replied "Well, he confronted Rigo, Jr. on his own." Justice Stone then said "uh-huh, okay." Detective Litrenta then testified "And that's how he obtained his information."

25. Between January 12, 1997 and February 25, 1997, the City of New York, New York City Police Detective Joseph Litrenta, Police Officers John Doe (#1-5) and New York Assistant District Attorney Ryan W. Brackley, Esq. conspired, during the criminal investigation phase of the case, to create probable cause where no probable cause actually existed, based on a tainted identification from Janette Andriuolo, a witness that never saw Michael Vasquez during the robbery, and who was told by her boyfriend Raoul Gonzalez, a person who was not present during the robbery and did not witness the robbery, that Michael Vasquez had committed the crime. Detective Litrenta and all of his co-conspirators knew the identification by Janette  Andriuolo was tainted and thus did not give the defendants probable cause to arrest, charge and imprison Michael Vasquez. Detective Joseph Litrenta and his police co-conspirators caused Mr. Michael Vasquez to be indicted and unjustly and wrongly convicted and imprisoned on two counts of felony robbery, for 15 ½ years without having probable cause. There were two witnesses to this crime, one was Janette Andriuolo and the other was Rigo Gonzalez, Jr. Rigo Gonzalez, Jr. had already stated to Detective Litrenta that Michael Vasquez did not commit this crime.

26. On June 13, 2012, Hon. Lewis Bart Stone, Justice of the New York County Supreme Court held "On the basis of the testimony at the Section 440.10 hearing, as considered by this Court as finder of fact, the exhibits, the record of

9.

prior proceedings and the argument of counsel, and based on the conclusions and considerations set forth above, this Court has concluded that Vasquez has established his entitlement for relief under CPL Section 440.10(g). Vasquez' motion is hereby granted and his conviction vacated, and the matter is restored to the trial calendar for a new trial. This shall constitute the Decision and Order of the Court."

27. New York County Assistant District Attorney Ryan W. Brackley, during the investigation in the period between January 12, 1997 and February 25, 1997, with the aid of Detective Joseph Litrenta and other members of the New York City Police Department, conspired to manipulate the investigative process to make it appear that there was probable cause to arrest and charge Michael Vasquez with two counts of robbery when in fact there was no probable cause to arrest and charge Michael Vasquez. This conspiracy caused the Plaintiff, Mr. Michael Vasquez, to be arrested, charged, indicted, and tried for crimes he did not commit. This lead to the unjust and wrongful conviction and imprisonment of Michael Vasquez for felony robbery. The defendants withheld exculpatory evidence and testimony when they refused to grant limited immunity and allow an eyewitness to the robberies, Mr. Rigo Gonzalez, Jr., to testify before the Grand Jury. This violated Michael Vasquez Sixth Amendment right "to be confronted with the witnesses against him". Rigo Gonzalez, Jr. had previously stated to the District Attorney's Office that Mr. Michael Vasquez was not the person who committed the robberies. On December 16, 2011, at a New York State Criminal Procedure Law Section 440.10(1)(g) hearing, Rigo Gonzalez, Jr. was asked "What happened on January 11th, 1997?" Rigo Gonzalez, Jr. testified under oath that "I was in the car,

someone came in from the back, asked for money. I don't know where the money was. I don't remember if it was in a bag". Rigo Gonzalez, Jr. was then asked "Is that someone that came in the car, is he in the courtroom now?" Rigo Gonzalez, Jr. answered "No." Rigo Gonzalez, Jr. was then asked "Was it Michael Vasquez that came in that car?" Rigo Gonzalez, Jr. answered "No." Justice Lewis Bart Stone asked Rigo Gonzalez, Jr. "Was he in the car? Was Michael Vasquez in the car? Rigo Gonzalez, Jr. answered "No, sir." Rigo Gonzalez, Jr. was asked "Did you see Michael Vasquez around that area at all?" Rigo Gonzalez, Jr. answered "I don't remember that. I don't remember seeing him." Rigo Gonzalez, Jr. was then asked "You don't remember seeing Michael Vasquez?" Rigo Gonzalez, Jr. answered "No." Rigo Gonzalez, Jr. was then asked "When the crime took place, was Michael Vasquez there when the crime took place?" Rigo Gonzalez, Jr. answered "No." Finally, Justice Lewis Bart Stone stated "Let's move on. His testimony is Michael Vasquez was not in the car." Therefore the only eyewitness to the robbery who actually knew Michael Vasquez, and could identify him, stated that Michael Vasquez was not the person who committed the robbery and was not the person who stole the car. Yet both Detective Litrenta and A.D.A Ryan W. Brackley disregarded the exculpatory statement of Rigo Gonzalez, Jr., during the investigation, that Michael Vasquez was not the person who committed the crime of robbery.

28. New York City Police Detective Joseph Litrenta knew that Ms. Janette Andriuolo was not able to independently identify Michael Vasquez as the person who committed the crime, he knew that she was not able to identify Mr. Vasquez on

the day of the robbery as the person who committed the robberies and he knew that she had been told by her boyfriend, Raoul Gonzalez, that Mr. Michael Vasquez was the person that committed the robbery. Det. Joseph Litrenta gave intentionally misleading testimony when he stated that he focused the investigation on Michael Vasquez because of a 'tip' that an 'informant' had given him when he knew that alleged 'informant' was actually the complaining witness Janette Andriuolo, in order to have Michael Vasquez wrongly indicted and convicted.  By stating that there was an additional informant Detective Litrenta made it appear to the jury that there were two individuals that had implicated Michael Vasquez as the person who committed the robbery, when in fact there was only one person who said Michael Vasquez did it and she based this on the word of Raoul Gonzalez, a person who had not seen the crime take place.

29. New York Police Detective Joseph Litrenta sworn testimony was that he received a tip from a second person who he claimed was an informant who he falsely claimed had identified Mr. Michael Vasquez as the person who committed the crime of felony robbery and car theft. This lead the trial jury to be falsely mislead into believing the testimony of the complaining witness Ms. Jannette Andrioulo had been in fact corroborated. However the fact is that Det. Joseph Litrenta knew that the alleged informant, who had stated that Mr. Michael Vasquez was the person who had committed the crime, was none other than the  complaining witness, Ms. Jannette Andrioulo, but this was never disclosed by him when he testified to the Grand Jury, nor the trial jury, nor to the attorney of the accused. Det. Joseph Litrenta, and Police Officers John Doe (#1-5) conspired to violate the civil rights of

12.

the Defendant Michael Vasquez by arresting him and charging him without probable cause and conspired to cause the unjust and wrongful conviction of the defendant Mr. Michael Vasquez and in fact caused Michael Vasquez to be unjustly and wrongly convicted, sentenced to a 20-year to Life prison sentence and caused him to serve over 15½ years in prison before his sentence, on the C.P.L. 440.10 (1)(g) motion of his attorney, Herbert Moreira-Brown, Esq., was vacated and a new trial was ordered by New York State Supreme Court Justice, Hon. Lewis Bart Stone.

30. On July 8, 1997, Wade and Huntley hearings were scheduled to be held at the New York State Supreme Court in New York County before Hon. Dorothy A. Cropper, New York State Supreme Court Justice, at 100 Centre Street, New York, New York. At the request of New York County Assistant District Attorney Ryan W. Brackley statement notice was withdrawn and the hearing proceeded as a Wade hearing. A.D.A Brackley called Det. Joseph Litrenta to testify. On cross-examin- ation Det. Joseph Litrenta was asked, by the defense attorney for Mr. Michael Vasquez, David E. Liebman, Esq. "When you were testifying on direct with regard to the photo array, officer, you said it came to your attention that Raoul Gonzalez knew Mr. Vasquez, correct? Det. Joseph Litrenta answered "That is correct." Det. Joseph Litrenta was then asked "When did that first come to your attention?" Det. Joseph Litrenta responded "That first came to my attention the day after the robbery." Det. Joseph Litrenta was asked "And who told you that, Raoul or Janet?" Det. Joseph Litrenta responded "When I came to work, there was a message in my box that someone had called and stated that the car was recovered and that the person who did it, his name was Mikey Vasquez, and he was on parole

in the Bronx. Det. Joseph Litrenta was asked "Did the message say who made the phone call?" Det. Joseph Litrenta responded "No." Det. Joseph Litrenta was asked "Did you ever ask Janet if she had made the phone call?" Det. Litrenta said "Yes." Det. Joseph Litrenta was asked "What did she tell you?" Det. Joseph Litrenta said "Yes." Det. Joseph Litrenta was asked "She was the one who made that phone call?" Det. Joseph Litrenta answered "Yes." Det. Joseph Litrenta was asked "Did you ask her who it was who told her that Mickey was the one who had been seen with the car?" Det. Joseph Litrenta answered "Yes." Det. Joseph Litrenta was asked "What did she say?" Det. Joseph Litrenta said "She said Raoul told her." Det. Joseph Litrenta was asked "Did you ever discuss it with Raoul?" Det. Joseph Litrenta answered "Yes I did." Det. Joseph Litrenta was then asked "And did he tell you who it was who told him that Micheal had done this robbery?" Det. Joseph Litrenta answered "Yes." At this point Assistant District Attorney Ryan W. Brackley said "Objection." At this point in time, as of July 8, 1997, both Det. Joseph Litrenta and Assistant District Attorney both knew that complaining witness, Janette Andriuolo, was the person who supplied the alleged tip and that the source of that "tip" information was not from her personal knowledge but from her "boyfriend" Raoul Gonzalez. They both knew that her identification of the Plaintiff Michael Vasquez was "tainted and flawed" and because of this tainted and flawed identification they did not have the necessary probable cause to arrest, charge and prosecute him. The actions of the defendants, during the investigation of the crime, constituted a violation of Plaintiff's federal and state constitutional rights and his civil rights. The defendants knowingly arrested and charged a person without

14.

probable cause and then proceeded to purposely mislead a grand jury, trial court and trial jury into convicting an innocent man with manufactured and misleading evidence with the full knowledge that they did not have probable cause to proceed with the prosecution and that Michael Vasquez was not the person who committed the crime.

31. On December 21, 2012, the New York County District Attorney's Office declined to prosecute Michael Vasquez because the testimony of the person who actually committed the crime, Alfred Charlemagne, had proven that Michael Vasquez was "actually innocent" and the New York County District Attorney's Office could not possibly prove his guilt beyond a reasonable doubt, so they decided not bring this case to trial with a certain acquittal staring them in the face and a federal malicious prosecution lawsuit starring them in the face. They recommended to New York Supreme Court Justice Stone that the indictment against Michael Vasquez be dismissed. On December 21, 2012, Hon. Justice Lewis Bart Stone ordered that the indictment against the Plaintiff, Michael Vasquez, be dismissed. (see exhibit # 1-Certificate of Disposition Dismissal)

32. The New York County District Attorney's Office at all relevant times was and is an elected officer of New York County, one of the constituent counties of the City of New York, and the District Attorney's Office was and is funded out of the City of New York's budget. The District Attorney was and is designated as a "local officer", rather than a "state officer", under section 2 of the New York Public Officers Law and New York has provided by statute (New York County Law Sections 53, 941) that the City's constituent counties, including New York

15.

County, and thus the City of New York itself, shall have liability for torts committed by County officers and employees such as the Office of the District Attorney and his Assistants.

33. As a result of all defendants' wrongful and unconstitutional conduct, Plaintiff Michael Vasquez was deprived of his rights, privileges, and immunities as secured by the United States Constitution and other laws of the United States and the State of New York; was wrongly arrested and charged without probable cause, was wrongfully convicted and deprived of his liberty for over fifteen and one-half years while incarcerated in and confined to various correctional facilities where he feared being attacked; was exposed to degrading, dehumanizing, and emotionally destructive prison conditions; was wrongfully deprived of his familiar rights; was caused to suffer physical and psychological conscious pain and suffering while contracting Hepatitis C when he was directed to work in the Prison Hospital and developing Post Traumatic Stress Disorder, including mental anguish, great stress, anxiety, shame, indignity, humiliation, separation from friends and family, isolation from society, nightmares, nervousness, sleeplessness and depression, suffered irreparable harm to his reputation; was hindered and prevented from performing and transacting his affairs and business, resulting in loss of income (both past and anticipated future); suffered a loss of enjoyment of life; was caused to incur expenses for legal representation; will need to incur expenses to address the aforementioned physical and psychological injuries; was caused to suffer great inconvenience; lost more than fifteen years of freedom; and was otherwise damaged.

16.

## FIRST CLAIM FOR RELIEF
## <u>DEPRIVATION OF FEDERAL CIVIL RIGHTS</u>

34. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 33 with the same force and effect as if fully set forth herein.

35. All of the aforementioned acts of the Defendants, their agents, servants and employees were carried out under color of state law.

36. All of the aforementioned acts deprived Plaintiff, Michael Vasquez, of the rights, privileges and immunities guaranteed to citizens of the United States of America by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States of America and in violation of 42 U.S.C. Section 1983, 1985, and 1986.

37. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

38. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and rules of the City of New York and the New York Police Department, all under the supervision of ranking officers of said department.

39. The Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of his or respective municipality and or authority, which is forbidden by the Constitution of the United States of America.

17.

40. Defendant Detective Joseph Litrenta actions were part of a pattern, practice and policy of the New York Police Department (NYPD) and the City of New York to ignore and violate the constitutional rights of the people with whom they come in contact with.

41. The Acts of the NYPD, Det. Litrenta and the various New York City Police Officers John and Jane Doe were committed under their authority as NYPD and as police officers vested under and by virtue of the laws of the State of New York, and were, therefore, committed under the color of state law.

42. The City of New York knew of the need for additional screening, training, supervising and disciplining of police officers to : (a) refrain from ignoring evidence of a criminal defendant's innocence; (b) refrain from misrepresenting, withholding or falsifying evidence. (c) exercise care and thoroughness in the investigation and prosecution of a case of armed robbery involving no other evidence but identifications; (d) accurately identify, handle and disseminate to defense counsel exculpatory material and exculpatory evidence; (e) refrain from obtaining indictments in bad faith and without probable cause; (f) refrain from giving false, misleading and incomplete testimony and (g) refrain from conspiring to wrongly convict innocent individuals and in fact obtaining wrongful convictions and imprisonment.

43. Through intentional and deliberate indifference, the City of New York failed to adequately provide for screening, training, supervising and disciplining of police officers with respect to the above mentioned issues. The City of New York exhibited deliberate indifference. The City of New York knew to a moral certainty

that their city employees, including officers of the New York City Police Department would confront a particular situation, such as making an arrest or testifying at a tribunal, the situation would present the employee with a difficult choice, such as making an arrest without probable cause or making false or misleading statements to cover up a lack of probable cause to arrest and detain, that training or supervision will make less difficult and there has been a history of NYPD Police Officers mishandling this situation involving probable cause and the wrong choice by the police officers of the NYPD would frequently cause the deprivation of a citizen's constitutional rights. This deliberate indifference is evidenced by decisions of the courts of the State of New York reporting that the NYPD and its employees engaged in various acts of misconduct including but not limited to the falsification of evidence, withholding evidence of innocence, Giving misleading testimony at grand jury hearings or at trial, giving false testimony and, generally failing to act in a reasonable, professional and honest capacity, including but not limited to:

Riddick v. City of New York, 772 NYS 2d 294, 4 A.D.3d 242(1st Dept 2004)
Bonefant v. Kelly, 759 NYS 2d 872, 306 A.D.2d 108 (1st Dept 2003)
Wagner v. Kerik, 748 NYS 2d 860, 298 A.D.2d 322 (1st Dept 2002)
Seligson V. Kerik, 744 NYS 2d 655, 295 A.D.2d 262 (1st Dept)
Foy v. Safir 717 NYS 2d 126, A.D.2d 169 (1stDept 2000)
Titone v. Safir, 717 NYS 2d 55, 277 A.D. 161(1st Dept 2000)
Castro v. Safir, 717 NYS 2d 44, 277 A.D. 2d 123 (1st Dept 2000)
Mieles v. Safir, 707 NYS 2d 437, 272A.D. 199(1st Dept)
Sannuti v. Safir, 689 NYS 2d 479, 261 A.D. 2d 153 (1st Dept 1999)
Bravakos v. Bratton, 678 NYS 2d 21, 254 A.D. 2d 32 (1st Dept 1998)
Ranalli v. Safir, 672 NYS 2d 872, 250 A.D. 2d 507 (1st Dept 1998)
Vasquez v. Safir, 673 2d 12, 250 A.D. 448(1st Dept1998)
People v. Kenrik, 162 Misc.2d 75, (Crim., N.Y. County 1994)
Hickey v. Ward, 555 NYS 2d 763, 161 A.D. 495 (1st Dept 1990)

44. Upon information and belief, police officers have not been disciplined by the City of New York or in the NYPD for their misconduct, despite repeated judicial

14.

findings that a police officer from that office engaged in misconduct. Such failure constitutes deliberate indifference toward the constitutional rights of the accused and such misconduct constitutes a practice, pattern and custom of engaging in police misconduct including, but not limited to withholding exculpatory evidence, giving false testimony and arresting without probable cause.

45. By virtue of the decisions referred to above and other information and court decisions, the NYPD and the City of New York knew that the need for adequate screening, training, supervising, and disciplining of its employees was and is compelling because of the overriding practice, pattern and custom of validating each arrest, where possible, with an accompanying indictment and conviction of those innocent individuals. Officers like Detective Joseph Litrenta, were allowed and encouraged to make arrests, even when and where they knew that probable cause did not exist or was "problematic", and "clear cases" quickly and at all costs with deliberate and total disregard for the truth and total disregard and distain for the constitutional rights of the accused.

46. But for the City of New York's deliberate indifference in failing to adequately provide screening, training, supervision, and discipline of police officers and its affirmative acts, the innocent plaintiff would not have been arrested, prosecuted nor convicted for the crimes with which he was charged, nor have continued to suffer through the failure of his post-conviction motions.

47. The aforementioned conduct operated, inter alia, to deprive the Plaintiff, Michael Vasquez, of important and well established rights under the Fourth, Fifth, Sixth, Eight, and Fourteenth Amendments to the United States Constitution, and

the rights established by the Constitution of the State of New York, including plaintiff's right not to be significantly detained pretrial except pursuant to a fair and reliable determination of probable cause, his right to be free from bad-faith prosecution, his right to a fair trial. His right to freedom from the deprivation of liberty without due process of law, and his right to be free from cruel and unusual punishment. Such misconduct also directly and proximately caused his arrest, indictment, the conviction, the life sentence and plaintiff's incarceration for over fifteen and one-half years. A Wrongful Conviction of an innocent man is cruel and unusual punishment as per the United States Constitution's Eight Amendment.

48. By reason of the aforesaid violations of the Plaintiff's rights, plaintiff is entitled to damages under Section 1983, Title 42, of the United States Code.

49. The foregoing violations of the Plaintiff's Constitutional rights, the arrest and detainment without probable cause, the conviction, the sentence, plaintiff's incarceration, and the resulting and continuing injuries to the plaintiff were further and proximately caused by the City of New York's deliberate indifference to the Constitutional rights of persons and individuals coming into contact with the NYPD and their to properly and thoroughly screen, supervise and train, where necessary, their personnel.

50. With respect to all of the wrongful actions and omissions alleged above, the City of New York knew to a moral certainty that its employees would confront such situations that adequate screening, training, equipment, supervision, and discipline would have made the City of New York employees choices less difficult, and there is a clear history of employees mishandling such situations; and that

21.

wrong choices by the City of New York's NYPD employees and offices frequently result in deprivation of a citizen's Constitutional Rights.

51. The foregoing violations of plaintiff's Constitutional rights comprised Constitutional torts and were effected by actions undertaken under color of law, statutes and regulations of the State of New York.

52. The individual defendants are responsible personally and in their official capacities for the violation of Plaintiff said Constitutional rights.

53. By their actions and inactions in this regard, defendants City of New York and the New York Police Department act with deliberate indifference to the rights of those with whom they come into contact which resulted in the deprivation of a citizen's constitutional rights.

54. As a result of said actions and inactions by the defendants the City of New York and the New York Police Department, the Plaintiff, Michael Vasquez, was falsely arrested without the necessary probable cause, falsely detained, wrongly convicted, falsely and wrongly imprisoned, suffered malicious abuse of process and maliciously prosecuted for a crime which he did not commit, for which the defendants knew he did not commit, yet was prosecuted and convicted for anyway.

55. By these actions, these Defendants have deprived Plaintiff, Michael Vasquez, of rights secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983, for which the Defendants are individually liable, and the Plaintiff was damaged in the sum of $150,000,000 (One-Hundred and Fifty Million Dollars).

22.

## SECOND CLAIM FOR RELIEF:
## CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER U.S.C. 1985

56. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 55 with the same force and effect as if fully set forth herein.

57. At all times relevant, the acts of the Defendants, including A.D.A. Ryan W. Brackley, NYPD Detective Joseph Litrenta and New York City Police Officers, John Doe #1-5, conspired during the robbery investigation of Michael Vasquez, to falsely arrest the Plaintiff Michael Vasquez, without probable cause. Det. Joseph Litrenta, New York City Police Officers John Doe #1-5 and A.D.A.  Ryan W. Brackley conspired, during the investigation, to make it appear that there was probable cause to arrest and imprison the Plaintiff, when in fact no probable cause ever existed. Det. Litrenta, A.D.A Ryan W. Brackley and NYPD police officers John and Jane Doe (#1-5) conspired during the investigation to influence the presentment of indictment to the grand jury and/or the verdict at trial. Prosecutors do not have absolute immunity during their acts and actions associated with conspiring during a criminal investigation of an alleged defendant. Witnesses are not immune for extra-judicial actions such as an alleged conspiracy to present false and or misleading testimony, and thus Defendant Joseph Litrenta and the other police officers, who conspired to violate the plaintiff constitutional and civil rights of the plaintiff Michael Vasquez, are directly liable for the harm suffered by Plaintiff Michael Vasquez.

Defendant Joseph Litrenta and NYPD officers, John Doe # 1-5, were part of a pattern, practice and policy of the City of New York through its police force, the

23.

NYPD, that either worked individually or conspired with others to make criminal cases with flawed or no probable cause look like actual felony violations by bolstering witnesses that relied on the hearsay when asked to identify a person as the perpetrator of a crime and suppressing exculpatory evidence and intimidating potential witnesses who possessed exculpatory testimony, statements and evidence. Detective Litrenta stated under oath that he had a pattern of showing photo arrays of possible criminal suspects to individuals, for identifications purposes, who had not witnessed the occurrence of the alleged crime in question. On January 3, 2012, while Detective Litrenta was testifying he was asked " Now, you stated that you showed the photo array to Raul Gonzalez; is that correct?" Detective Litrenta responded "I showed a photo array of Raul Gonzalez?" He was then asked "No to Raul Gonzalez." He responded "I showed it to him, yes." He was then asked "Now was Raul Gonzalez a witness to this crime?" Detective Litrenta answered "No, he was not." He was then asked "So do you normally show in the regular course of being a detective photo arrays to non-witnesses of crimes?" Detective Litrenta responded "Depending on the particulars of the case, sometimes I do." Detective Litrenta was then asked "Why did you show it to Raul Gonzalez?" He  responded "Because it was known to me that Raul Gonzalez knew Michael Vasquez. Janette Andriuolo never seen Michael Vasquez before. She identified somebody in the photo array and before I arrested and charged somebody in a serious crime, I'm going to do everything I can to verify that the right person was identified. And in this case, Raul Gonzalez personally knew Michael Vasquez. So later on when I showed that photo array to (of?) Michael Vasquez, it confirmed to me that

24.

unbeknownst to Janette Andriuolo who never met the person before (,) did, in fact, pick out the right person." Detective Litrenta was then asked "After you found out that Janette Andriuolo had told you that Raul Gonzalez had identified Michael and told her that Michael was the robber? Detective Litrenta stated "Right" Defense Counsel stated "okay." Detective Litrenta stated "I conducted an investigation. Several weeks later I identified a subject. That's when the photo array was prepared." When asked about the exculpatory statements that Rigo Gonzalez, Jr. made, he was asked "Did Rigo, Jr., Rigo Gonzalez, Jr., that was the other person who was allegedly one of the victims? ... Did he ever identify ... ? Detective Litrenta responded " Right he was uncooperative." Defense counsel replied "Excuse me?" He replied "He was uncooperative." Detective Litrenta was then asked "Did he ever – my question is, did he ever identify Michael Vasquez?" Detective Litrenta responded "No, he was uncooperative." Detective Litrenta was then asked "Did he ever identify Michael Vaquez?" Detective Litrenta responded "No, he did not." (page 489, January 3, 2012) Detective Litrenta knew at that point in the investigation that the only victim to the robbery who actually knew Michael Vasquez, Rigo Gonzalez, Jr., never identified Michael Vasquez as the person who committed the crime of robbery. Yet he relied on the statement of a witness, Janette Andriuolo, who had to be told, by Raoul Gonzalez, who never witnessed nor actually saw the robbery, that Michael Vasquez was the person who committed the crime. This shows that Detective Litrenta acted without probable cause, with other defendants including A.D.A Ryan W. Brackley, during the investigation to falsely arrest, and wrongly detain and charge without probable cause, Michael Vasquez

with two counts of robbery. Det. Litrenta also stated that he told A.D.A Ryan W. Brackley everything about the statements made and evidence gathered during the investigation. Therefore it is apparent that A.D.A. Brackley knowingly conspired with Detective Litrenta to violate the civil and constitutional rights and to falsely arrest without probable cause, wrongly imprison, charge and indict Michael Vasquez.

This pattern, practice and policy of the police officers of the NYPD was known to and accepted by City of New York and showed a policy of deliberate indifference of and by the City of New York to the unlawful, and unconstitutional practices of the NYPD that have cause the deprivation of many constitutional rights of citizens of the City of New York and other Americans.

58. By reason of the aforesaid violations of the Plaintiffs rights, Plaintiff is entitled to damages under Section 1985, Title 42, of the United States Code.

59. All of the aforementioned Defendants conspired to violate Plaintiff's civil rights and constitutional rights by agreeing among themselves, during the investigation of this felony crime, to agree to conspire to falsely and wrongly arrest an innocent person, without any probable cause, to give false and/or misleading testimony, to falsely charge Plaintiff with crimes, testify falsely and to introduce false and/or misleading evidence, as described above, in order to have the Plaintiff, Michael Vasquez, falsely arrested, wrongly convicted and wrongly imprisoned, in violation of 42 U.S.C Section 1985, for which the Defendants are individually liable.

**THIRD CLAIM FOR RELIEF:**
**<u>FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C. SEC. 1983</u>**

26.

60. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 59 with the same force and effect as if fully set forth herein.

61. The Plaintiff, Michael Vasquez, was falsely and wrongly confined by the defendants, without probable cause. The Plaintiff, Michael Vasquez, was conscious of his wrongful confinement and the Plaintiff, Michael Vasquez, strenuously objected to his false and wrongful confinement and imprisonment by the defendants by proclaiming his innocence. This wrongful confinement, by the defendants, was not privileged because the defendants never obtained nor had probable cause for the wrongful and false arrest and confinement of the Plaintiff, Michael Vasquez.

62. With intent and gross negligence, defendants Detective Joseph Litrenta, Assistant District Attorney Ryan W. Brackley, the City of New York, through the NYPD, made an agreement and acted in concert to purposely cause a violation of the plaintiffs constitutional rights with the unjust and false arrest and the false imprisonment, without probable cause, of the Plaintiff, Michael Vasquez, for a crime that he did not commit.

63. The Defendants did not have sufficient knowledge or reasonably trustworthy information to believe that a criminal offense had been committed by the person who was arrested, namely Michael Vasquez. The Defendants knew that the complaining witness, Janette Andriuolo, who stated to the police, immediately after the robbery that she did not know the identity of the person who committed the robbery nor did she know their name, was told by her boyfriend, Raoul Gonzalez, a person who was not a witness to the robbery, and who had photos of

27.

Michael Vasquez and was an admitted drug dealer, gang leader and convicted felon, that Michael Vasquez, was the person who committed the robbery. Raoul Gonzalez also testified that he never witnessed the robbery that Michael Vasquez was falsely arrested for. The defendants knew that when they "focused" their investigation on Michael Vasquez they did not have probable cause because any identification by the complaining witness, Janette Andriuolo, was tainted because she could not independently identify Michael Vasquez as the person who committed the crime. Defendant Joseph Litrenta, testified under oath that at the C.P.L. 440.10(1)(g) hearing, Janette Andriuolo was told by her boyfriend, Raoul Gonzalez, that Michael Vasquez was the person who committed the alleged crime. Detective Litrenta was also told by Rigo Gonzalez, Jr. that Michael Vasquez did not commit the crime.

64. As a result of Defendants' aforementioned conduct, Plaintiff, Michael Vasquez, was subject to an illegal, improper and false arrest by the Defendants without probable cause and taken into custody, without probable cause, and caused to be falsely and wrongly imprisoned, detained, confined, incarcerated and prosecuted by the Defendants in criminal proceedings, without any probable cause, privilege or consent, which ultimately lead to his conviction and imprisonment for 15 and one-half years.

65. As a result of his false arrest, Plaintiff was subjected to humiliation, ridicule, disgrace, possible revocation of his parole and incarceration. Plaintiff was discredited in the minds of many members of his family, friends and community.

66. As a result of the foregoing, Plaintiff was falsely arrested without probable cause, wrongly convicted and imprisoned for 15 and one-half years, and

was wrongly deprived of his God given right to raise his children, cohabitate with his wife and the chance to work, earn a living and support his family.

67. Pursuant to 28 U.S.C Section 1367, this Court has pendant jurisdiction to hear and adjudicate such claims.

### FOURTH CLAIM FOR RELIEF:
### MALICIOUS PROSECUTION AND WRONGFUL CONVICTION UNDER 42 U.S.C. SECTION 1983

68. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 67 with the same force and effect as if fully set forth herein.

69. With intent to wrongly convict and gross negligence, Defendants Detective Joseph Litrenta, A.D.A. Ryan W. Brackley, NYPD Officers John Doe #1-5 and the City of New York caused the malicious prosecution and wrongful conviction of Plaintiff Michael Vasquez for a crime he did not commit.

70. Defendant Ryan W. Brackley initiated the criminal proceeding, without the necessary probable cause, that led to the false arrest and prosecution of the Plaintiff, Michael Vasquez. After more than 15 years the conviction of Michael Vasquez was vacated and the indictment was dismissed. As stated above there was absolutely no probable cause for the arrest of Michael Vasquez. The defendants acted with malice in their malicious prosecution of Michael Vasquez. (see 56-59 above) The indictment of the plaintiff was procured by fraud, perjury, misleading statements, suppression of evidence and other police conduct undertaken in bad faith.

71. Defendants were directly and actively involved in the initiation of

29.

criminal proceedings against the Plaintiff, Michael Vasquez, and the malicious

prosecution of the Plaintiff, for which he falsely arrested without probable cause

and was wrongly convicted and imprisoned for over 15 years.

72. Defendants lacked probable cause to initiate criminal proceedings against

Plaintiff. Defendants acted with malice in initiating criminal proceedings against

Plaintiff and refused to disclose the exculpatory statement of a victim of and an

eyewitness to the crime, Rigo Gonzalez, Jr., where he stated that Michael Vasquez

was not the person who committed the crime.  Rigo Gonzalez, Jr., who knew

Michael Vasquez by sight and name, and could positively identified Michael

Vasquez, was never asked to testify before the Grand Jury because his testimony

would have stated under oath that Michael Vasquez did not commit the crime.

73. Defendants were directly and actively involved in the continuation of

criminal proceedings against Plaintiff without having probable cause to proceed.

74. Defendants lacked probable cause to continue criminal proceeding

against Plaintiff, and had evidence that the complaining witness could not identify

the Plaintiff, Michael Vasquez, as the person who committed the alleged crimes but

was in fact relying on the accusation of her boyfriend, Raoul Gonzalez, an

individual who was not an eye witness to the actual criminal acts, when she

implicated the Plaintiff, Michael Vasquez, as the perpetrator of the crimes.

75. The Defendants initiated the criminal proceeding without the necessary

probable cause, the criminal proceeding terminated favorably to the plaintiff, there

was a lack of probable cause and the defendants acted with malice because they

knew that Michael Vasquez was probably innocent and they did not try to find the

truth and mislead the grand jury with misleading testimony as exhibited by their threat to Rigo Gonzalez, Jr. that if he testified before the grand jury he would need an attorney because he was not going to get any type of immunity to testify.

76. Defendants acted with malice in continuing criminal proceedings against Plaintiff which resulted in the wrongful conviction of the Plaintiff in October, 1997.

77. The wrongful conviction was vacated on June 13, 2012, and the indictment was dismissed on December 21, 2012 By New York State Justice, Hon. Lewis Bart Stone.

### FIFTH CLAIM FOR RELIEF:
### MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. SECTION 1983

78. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 77 with the same force and effect as if fully set forth herein.

79. Defendants issued legal process to place Plaintiff under arrest. (See paragraphs 56 through 59 above)

80. Defendants Detective Joseph Litrenta, and Police Officer John Doe (#1-5) arrested Plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process and without probable cause. Defendants made a deliberate and malicious misuse of a criminal court process that was not justified by the underlying legal action and conducted without probable cause. Defendants acted with the intent to do harm to Plaintiff without excuse or justification. Defendants knew that the Plaintiff would be irreparably harmed if they continued with their abuse of process. Defendants exhibited a willful disregard for the freedom of the Plaintiff and for the

harm Plaintiff would suffer yet they continued their malicious abusive path. The defendants had an ulterior purpose and motive to arrest and imprison Michael Vasquez without probable cause and use the criminal justice legal process to help and assist to wrongly indict and wrongly convict the plaintiff Michael Vasquez.

**SIXTH CLAIM FOR RELIEF:**
**MUNICIPAL LIABILITY**

81. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 80 with the same force and effect as if fully set forth herein.

82. At all times relevant, City of New York Police Officers, Defendants Detective Joseph Litrenta, and Police Officer's "JOHN DOE" #1-5 (said names being fictitious, as the true names are presently unknown), and the New York City Police Department, were acting in the scope of their employment and/or as a policy maker for the City of New York.

83. To the extent applicable, the City of New York is liable in respondeat superior for said defendant's actions.

84. Defendant City of New York knew or should have known of the Police defendants' propensity to arrest and charge innocent individuals, without any probable cause, and to engage in illegal, wrongful, and negligent acts detailed above and/or as a matter of policy and practice, has with deliberate indifference, failed to take steps to uncover and/or correct such conduct.

85. Defendant City of New York has failed to take adequate steps to Discipline those officers who arrest without probable cause, to properly train officers how to ascertain legally sufficient probable cause, to supervise to insure that

32.

arrest of individuals are made with legally sufficient probable cause or otherwise correct the improper and illegal conduct of said defendants and/or as a matter of policy and practice, has with deliberate indifference failed to take steps to uncover and/or correct such conduct and behavior.

86. Defendant City of New York has damaged the plaintiff by its failure to properly supervise, train, discipline, review, remove or correct the illegal and improper acts of arresting without probable cause, said defendants and/or as a matter of policy and practice, has with deliberate indifference, failed to take steps to uncover and/or correct such conduct.

87. Defendant City of New York was negligent in the operation of its police department and knew of or should have known of illegal and unconstitutional acts, such as arresting innocent individuals without probable cause, its employees, agents and servants in their New York Police Department were committing or conspiring to commit with the New York County District Attorney's Office during criminal investigations.

88. The injuries suffered by the Plaintiff were proximately caused by each and every one of the policies and practices set forth herein.

89. The actions of the defendants, including the City of New York, resulted in the deprivation of the Plaintiff's rights pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

90. As a result of the false arrest due to lack of probable cause, malicious prosecution, unlawful imprisonment, the violation of said constitutional rights and liberties, and deprivation of liberty, Plaintiff Michael Vasquez, was damaged in the

sum of One Hundred and Fifty Million Dollars ($150,000,000).

**SEVENTH CLAIM FOR RELIEF:**
**MUNICIPAL LIABILITY**

91. Plaintiff repeats, reiterates and re-alleges paragraphs 1 through 90.

92. Defendant City of New York knew or should have known of the Police defendant's propensity to engage in illegal, wrongful and negligent acts, such as arresting, detaining and imprisoning individuals without probable cause, as detailed above and/or as a matter of policy and practice, and has with deliberate indifference failed to take steps to uncover and/or correct such conduct. This knowingly illegal, and unconstitutional conduct took place from January, 1997 until October, 1997.

93. Defendant City of New York has failed to take adequate steps to discipline, train, supervise or otherwise correct the improper and illegal conduct of said defendants as detailed above and/or as a matter of policy and practice, has with deliberate indifference failed to take steps to uncover and/or correct such conduct.

94. Defendant City of New York maintained a policy and practice of arresting and prosecuting individual without probable cause.

95. Defendant City of New York has damaged the Plaintiff by its failure to properly supervise, train, discipline, review, remove or correct the illegal and improper acts of the defendant' s police officers and supervisors and the individual defendants under its supervision and control as a matter of policy and practice, and has with deliberate indifference, failed to take steps to uncover and/or correct such conduct such as arresting and detaining individuals without probable cause to arrest.

96. Defendant City of New York was negligent in the operation, supervision and control of its police department.

97. By its actions, the City of New York deprived the Plaintiff of his constitutional rights under the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the Constitution of the United States of America.

98. The injuries suffered by the Plaintiff, Michael Vasquez, were proximately caused by each and every one of the policies and practices set forth herein.

99. As a result of the false arrest, malicious prosecution, wrongful conviction, false imprisonment, violation of constitutional rights and deprivation of liberty, the plaintiff was damaged in the sum of One Hundred and Fifty Million ($150,000,000) Dollars.

### EIGHTH CLAIM FOR RELIEF
### <u>MALICIOUS PROSECUTION</u>

100.    Plaintiff repeats, reiterates and re-alleges Paragraphs 1 through 99.

101.    During the investigation stage and prior to any judicial proceedings, and then continuing thereafter, including after the arrest and indictment of the Plaintiff, all of the defendants, including A.D.A Ryan W. Brackley, who initiated the criminal proceeding and maliciously prosecuted the Plaintiff, Michael Vasquez. The Plaintiff's criminal conviction, which was terminated favorably, was vacated after more than 15 years and the indictment was dismissed by the New York State Supreme Court. There was a lack of probable cause to arrest Michael Vasquez and absolutely no probable cause to prosecute Michael Vasquez. This prosecution was with malice.

35.

102.   Assistant District Attorney Ryan W. Brackley, the New York County District Attorney's Office and other John and Jane Does owed a duty of care to act ethically and within the rules of law, and as quasi-judicial officers to ensure a fair investigation, a fair trial, free of solicited perjury and the withholding of exculpatory evidence and testimony, proper post-conviction proceedings free from misrepresentation.

103.   A.D.A. Brackley, his supervisors at the New York County District Attorneys Office and other defendants failed to conduct themselves in that manner by knowingly withholding and ignoring exculpatory evidence when they had an absolute duty to ensure against its use and bring it to the attention of the court and counsel if it occurred. The defendants ignored evidence demonstrating the innocence of the plaintiff and sought his arrest and indictment despite unreliable and conflicting evidence of his involvement in the face of clear-cut leads that were known by the defendants but purposely not pursued by them. In addition Defendant Brackley refused to grant full or limited immunity to allow one of the two eye witnesses to testify at the grand jury and the failure of Defendant Brackley to secure the attendance of that witness, Rigo Gonzalez, Jr., pursuant to a material witness order, to testify at trial in spite of the New York County District Attorney's and Defendant Brackley being ordered to produce that person.

104.   A.D.A. Brackley violated his administrative duties when he purposely defied complying with the material witness order of trial judge Honorable David B. Saxe, Justice of the New York State Supreme Court, when he intentionally failed to notify and or inform or direct and have the Officers of the New York Police Dept.

Plaintiff, Michael Vasquez, because he knew that Rigo Gonzalez, Jr. would testify under sworn oath, at the trial, that Plaintiff Michael Vasquez was not the person who committed the robbery that day.

105.  A.D.A Brackley also threatened Rigo Gonzalez, Jr., that if he planned to testify at the New York County Grand Jury hearing he would have to get an attorney because Rigo Gonzalez, Jr., would not be given full or limited immunity for his testimony before the New York County Grand Jury. Rigo Gonzalez, Jr. was one of the two individuals who were allegedly victims of the crime that Plaintiff Michael Vasquez allegedly committed and had previously stated to A.D.A. Brackley that Plaintiff Michael Vasquez was not the person who committed the crime.

106.  NYPD Detective Joseph Litrenta KNEW THAT THE "OTHER WITNESS", Janette Andriuolo could not independently identify the Plaintiff Michael Vasquez as the person who committed the robbery and he stated as much when he testified at the 440.10(1)(g) hearing and at a July, 1997, Wade Identification hearing. At that hearing, he stated knew that Janette Andriuolo did not know the name of the person who committed the robbery and could not identify the person who committed the robbery on the day of the robbery. He further stated that the next day "an informant", who he later identify as Janette Andriuolo, left a "tip" that Michael Vasquez was the person who committed the robbery. Det. Joseph Litrenta stated that he had found out before the grand jury hearing and the trial that "Eye Witness" Janette Andriuolo had been told by her 'boyfriend' Raoul Gonzalez that Michael Vasquez was the person who committed the crime, later that night.

107.  The withholding of this relevant, exculpatory and contradictory

107.   The withholding of this relevant, exculpatory and contradictory Evidence that was obtained during the investigation; including in connection with the grand jury presentation, is evidence of bad faith; a necessary element of malicious prosecution. The failure to make further inquiry and to conduct further investigation when in possession of information that others had committed the robbery and not Mr. Vasquez was unreasonable, contrary to the constitutional and legal obligations of all the defendants, and a violation of the requirement that a prosecution not proceed without probable cause.

108.   Probable cause was lacking despite the sole identifications of Mr. Vasquez made by Janette Andriuolo, this identification was known by the defendants to have been told to her by her boyfriend Raoul Gonzalez and not of her personal knowledge, and since the weakness and inconsistent nature of this identification was ignored despite the existence of significant facts, such as the other witness and victim Rigo Gonzalez, Jr. statement that Michael Vasquez was not the person who committed the robbery, that became known to the defendants during the investigation and pointed to the conclusion that these identifications were false and in error.

109.   Each of the defendants is liable personally and in their official capacity for these aforementioned acts which lead to the malicious prosecution of the Plaintiff and eventually lead to his wrongful conviction and unjust incarceration for nearly 15 and ½ years.

110.   As a result of this malicious prosecution and deprivation of liberty, Plaintiff was damaged in the sum of One Hundred and Fifty Million Dollars

($150,000,000).

## NINTH CLAIM FOR RELIEF: NEGLIGENCE

111.    Plaintiff repeats, reiterates and re-alleges paragraphs 1 through 110.

112.    To the extent A.D.A. Ryan W. Brackley and any or all of the New York County District Attorney's Office, or any of the defendants' unethical and improper actions can be attributed to a lack of adequate care in carrying out their investigative and administrative  responsibilities, they were the proximate cause of the injuries and damages herein alleged including the incarceration of an innocent man, the Plaintiff, for more than fifteen years.

## TENTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF MENTAL AND EMOTIONAL DISTRESS

113.    Plaintiff repeats, reiterates and re-alleges Paragraphs 1 through 112.

114.    Plaintiff Michael Vasquez has been diagnosed with having depression, anxiety and Post Traumatic Stress Disorder (PTSD) as a result of his false arrest, his wrongful detention without probable cause, wrongful conviction and over 15 year wrongful imprisonment.

115.    Defendant A.D.A. Ryan W. Brackley, and the defendants, John and Jane Doe, owed a duty of care to act ethically and within the rules of law during the investigation. Defendant Ryan W. Brackley and other assistant district attorneys in the New York County District Attorney's Office, in addition to owing a duty of care to act ethically and within the rules of law, owe a duty as quasi-judicial officers to ensure a fair investigation, a fair grand jury hearing which includes allowing all victims to testify with the usual full or limited immunity that is normally granted, and a fair trial with all exculpatory evidence being turned over to the court and the

criminal defense attorneys.

116.   A.D.A. Brackley and various New York County District Attorney Office personnel improperly concealed evidence of the innocence of the Plaintiff, Michael Vasquez and failed to share exculpatory evidence with the defendant.

117.   A.D.A. Brackley failed to investigate evidence that came to his attention and purposely refused to allow robbery witness and victim, Rigo Gonzalez, Jr., testify before the New York County Grand Jury when he intentionally declined to give the witness and victim immunity for his testimony and stated to the witness that if he testified that he would need to get an attorney, testimony that would have provided the grand jury with clear-cut evidence proving that Plaintiff Michael Vasquez was not the person who committed the robbery.

118.   Plaintiff's wrongful conviction and imprisonment caused him to suffer 15 and ½ years of anxiety, depression and horrible nightmares.

119.   Each of the defendants are liable personally and in their official capacity for these aforementioned acts which damaged Plaintiff.

120.   As a result of these intentional actions in disregarding the law, and their neglect of their sworn responsibilities in the investigation of this case, commencing a criminal prosecution and proceeding to the grand jury without probable cause, and maliciously prosecuting the Plaintiff Michael Vasquez, A.D.A. Ryan W.  Brackley and various New York County District Attorney Office supervisory and support personnel, were the proximate cause of the injuries and damages suffered by the plaintiff, including the false arrest, wrongful detention, withholding evidence, failing to give exculpatory evidence to the defendant,

malicious prosecution, calling witnesses who purposely mislead the grand jury

wrongful conviction and wrongful imprisonment of an innocent man. By improperly

concealing the evidence of the innocence of the Plaintiff during the investigation of

this case, Michael Vasquez, was damaged in the sum of One Hundred and Fifty

Million Dollars ($150,000,000).

<u>DAMAGES SUSTAINED BY PLAINTIFF MICHAEL VASQUEZ</u>

121.   The items of damage or injuries claimed to have been sustained by

Mr. Michael Vasquez are:

i.   Being falsely arrested and falsely imprisoned without the

defendants having probable cause to effectuate a legal arrest.

ii.   Being wrongly convicted and made to serve 15 ½ years in

prison for a crime that he did not commit, because of the wrongful and/or negligent

acts of City of New York and its employees, agents and servants, and the resulting

degradation as a result of the life sentence he was unjustly ordered to serve and the

suffering that he was endured after being unjustly and wrongly convicted;

iii.   Post traumatic Stress Disorder, depression and mental

anxiety, mental anguish and post incarceration psychological damage he has been

made to live with as a result of his wrongful conviction;

iv.   Loss of his constitutionally guaranteed right to a fair trial,

freedom of movement and freedom of association;

v.   Lost of job opportunities, 15 ½ years of lost earnings and

loss of raising his young children and cohabitation with his wife.

122.   The Federal Claims were served and filed within the three years after

41.

ninety days after the dismissal of the indictment.

   WHEREFORE, Plaintiff demands JUDGEMENT against defendants as follows:

   I.      For compensatory damages in the amount of one hundred million

dollars ($100,000,000);

   II.     For punitive damages in the amount of fifty million dollars

($50,000,000)

   III.    For reasonable attorneys' fees, together with costs and disbursement

pursuant to 42 U.S.C. Section 1988 and the inherent powers of this Court;

   IV.     For pre-judgment interest, as allowed by law;

   V.      For such other and further relief as this Court may deem just and proper.

   VI.     By reason of the foregoing, Claimant was damaged in the amount of

$150,000,000, and Claimant demands judgment against the Defendants for said

amount.


Dated: New York, New York
April 21, 2014


                        Respectfully submitted,

                        *Herbert Moreira-Brown, Esq.*
                        HERBERT MOREIRA-BROWN, ESQ.
                        Attorney for Plaintiff Michael Vasquez
                        4200 Hutchinson River Parkway East
                        Suite 26c
                        Bronx, New York 10475
                        (917) 328-3213